IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRADY JACKSON and KELLEY ALEXANDER,<br><br>   Plaintiffs,<br><br>   v.<br><br>BALANCED HEALTH PRODUCTS, INC., et al.,<br><br>   Defendants.<br>_____/ | No. C 08-05584 CW<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS |

   Plaintiffs Grady Jackson and Kelley Alexander bring a consumer class action under the Class Action Fairness Act of 2005. Dietary supplement retailer Defendants Vitamin Shoppe Industries, Inc. (VS) and General Nutrition Corporation (GNC) move to dismiss Plaintiffs' complaint. Defendants Balanced Health Products (BHP) and Nikki Haskell join in that motion. Nikki Haskell filed a separate motion to dismiss. Plaintiffs oppose the motions. The matter was heard on June 4, 2009. Having considered oral argument and all of the papers filed by the parties, the Court grants in part Defendants' motions.

BACKGROUND[1]

This case centers around StarCaps, a dietary supplement manufactured by Defendant BHP and its principal, Defendant Nikki Haskell. Approximately twenty-five years ago, Nikki Haskell developed StarCaps and promoted it as an "'all natural' over the counter diet pill that contained garlic and papaya extract as its main active ingredients." First Amended Complaint (FAC) ¶ 26. Attached to each bottle is a pamphlet, which contains the following representation:

> This all natural dietary supplement detoxes your system by metabolizing protein and eliminating bloat. It's safe, fast and effective, and it contains no ephedra. Lose between 10 and 125 pounds and keep it off! StarCaps are available at GNC, Great Earth and the Vitamin Shoppe.

Id. at ¶ 34.

In the November/December 2007 issue of The Journal of Analytical Toxicology, an article entitled, "Detection of Bumetanide in an Over-the-Counter Supplement," reported that StarCaps contain a powerful diuretic called Bumetanide.[2] The report described a study performed by the Center for Human Toxicology at the University of Utah. The Center purchased bottles of StarCaps and tested the pills through a high performance liquid chromatography, which revealed that all pills contained equal amounts of Bumetanide at near therapeutic doses. The article also implied that the uniformity of Bumetanide in StarCaps indicated that inclusion of the drug in the pill was intentional.

Bumetanide is considered a banned substance by the National

---

[1] All facts are taken from Plaintiffs' FAC and are assumed to be true for purposes of this motion.

[2] Bumetanide is available to consumers by prescription only.

2

Football League (NFL).  Although it is prescribed for the treatment of edema associated with congestive heart failure and hepatic and renal disease, Bumetanide can also mask steroid use.  Plaintiff Grady Jackson is a professional football player and is subject to the drug testing regime of the NFL.[3]  Jackson began taking StarCaps in March, 2008 to help him lose weight in preparation for the upcoming football season.  Later in the summer, Jackson tested positive for the drug and was suspended for four games.  Jackson is currently appealing that suspension.  After reports of Jackson's positive drug test became public, BHP issued a statement on Starcaps.com that it had temporarily suspended shipment of StarCaps to its retailers.  However, the retailers continued to sell StarCaps until BHP issued a voluntary recall of the product.

Defendants GNC and Vitamin Shoppe sell StarCaps.  GNC is the world's largest retailer of the nutritional supplement products, operating over 4800 locations around the world.  GNC claims to have quality control centers that monitor products received from vendors to ensure quality standards.  The Vitamin Shoppe owns and operates more than 400 retail locations around the country.  It claims to protect its customers by having quality control operating procedures to review vendors of third party products for their track records on quality, efficacy and safety.

Plaintiffs assert seven claims under California law, each based on selling and marketing the prescription drug Bumetanide in StarCaps: (1) unfair competition under Business & Professions Code

---

[3] The other named Plaintiff, Kelley Alexander, is not a professional football player.  Alexander is a California resident who purchased StarCaps for over four years because it was represented to be an all natural dietary supplement.

3

§ 17200, (2) false advertising under Business & Professions Code § 17500, (3) unjust enrichment, (4) breach of express and implied warranty, (5) strict product liability, (6) violation of the Sherman Law and (7) negligence.

LEGAL STANDARD

I.  Motion to Dismiss for Failure to State a Claim

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Rule 12(b)(6) is appropriate if the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

4

DISCUSSION

I.  Pre-emption by the Federal Food, Drug and Cosmetic Act

Though this case is about a dietary supplement,[4] the Court begins its discussion by noting the important recent United States Supreme Court decision on pre-emption, prescription drugs and the Food, Drug and Cosmetic Act in <u>Wyeth v. Levine</u>, 129 S. Ct. 1187 (2009).  The Court held that a failure-to-warn state law claim for lack of an adequate warning on a prescription label, even though the label had been approved by the Food and Drug Administration (FDA), was not pre-empted by the FDCA.  The Court noted that Congress did not provide a federal remedy for consumers harmed by unsafe or ineffective drugs when it passed the FDCA in 1938 because "widely available state rights of action provided appropriate relief for injured consumers."  <u>Id.</u> at 1199.  The Court continued, "If Congress thought state-law posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the FDCA's 70-year history.  But despite its 1976 enactment of an express pre-emption provision for medical devices . . . Congress has not enacted such a provision for prescription drugs."  <u>Id.</u> at 1200.

Thus, there is no express pre-emption of cases involving false advertising of dietary supplements in federal law under the

---

[4]The term "dietary supplement" is defined as "a product (other than tobacco) intended to supplement the diet that bears or contains one or more of the following dietary ingredients: (A) a vitamin; (B) a mineral; (C) an herb or other botanical; (D) an amino acid; (E) a dietary substance for use by man to supplement the diet by increasing the total dietary intake; or (F) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in clause (A), (B), (C), (D), or (E)."  21 U.S.C. § 321(ff).

5

1  FDCA.  No federal statute or regulation states that the field of
2  allegedly false advertising of dietary supplements is exclusively
3  the province of federal law.  However, the FDCA, which grants the
4  FDA authority to oversee the safety of drugs, provides that "all
5  such proceedings for the enforcement, or to restrain violations, of
6  [the FDCA] shall be by and in the name of the United States."  21
7  U.S.C. § 337(a).  "Courts have generally interpreted this provision
8  to mean that no private right of action exists to redress alleged
9  violations of the FDCA."  Summit Tech., Inc. v. High-Line Med.
10 Instruments Co., Inc., 922 F. Supp. 299, 305 (C.D. Cal. 1996)
11 (internal citations omitted).  Instead, "the right to enforce the
12 provisions of the FDCA lies exclusively within the federal
13 government's domain, by way of either the FDA or the Department of
14 Justice."  Id.

15      Defendants assert that Plaintiffs' suit is an attempt to
16 bring a private cause of action for violations of the FDCA and, as
17 such, is precluded.  Defendants cite many sections of the FDCA and
18 argue that Plaintiffs' complaint is essentially an assertion that
19 those sections are being violated.  For instance, Defendants argue
20 that the premise of Plaintiffs' complaint is that Defendants sold
21 a misbranded product as a dietary supplement while knowing it
22 contained a drug that could be sold by prescription only, and sold
23 it without the disclosure required by the FDCA.  21 U.S.C. §§ 301-
24 397.  Dispensing a prescription drug without a proper prescription
25 is "deemed to be an act which results in the drug being
26 misbranded," 21 U.S.C. § 353(b)(1)(B), and selling misbranded drugs
27 is a violation of the FDCA.  Id. § 331.  It is also a violation to
28 sell a prescription drug without the proper FDA-approved label.  21

6

U.S.C. § 352; 21 C.F.R. § 201.50-201.57.[5]

Defendants rely on Fraker v. KFC Corp., 2007 U.S. Dist. LEXIS 32041 (S.D. Cal. 2007). In Fraker, a plaintiff brought a putative class action against fast food chain KFC, alleging that KFC's advertising was misleading because its food was high in trans-fat content. Fraker directly brought FDCA claims against the defendant and the court concluded, "To the extent plaintiff contends that alleged violations of the FDCA and Sherman Law give rise to viable state law claims, such claims are impliedly preempted by the FDCA." Id. at *11. Fraker is distinguishable because, in the present case, Plaintiffs have not brought claims directly under the FDCA.

Defendants also rely on In re Epogen & Aranesp Off-Label Mkt'g & Sales Practice Litig., 590 F. Supp. 2d 1282 (C.D. Cal. 2008). There, the plaintiffs brought RICO and state law claims for violations of §§ 17200 and 17500 for the defendants' alleged promotion of a prescription drug for "off-label use," which is prohibited under 21 C.F.R. § 202.1(e)(6). The court concluded that the plaintiffs' "allegations of off-label promotion are, in essence, misbranding claims that should be reviewed by the FDA." Id. at 1289. However, the court noted,

> The existence of the FDCA does not completely preclude injured parties from asserting claims of fraud or false advertising. Other legislation, state and federal remains in effect to protect consumers from false and deceptive prescription drug advertising. The FDCA is not focused on the truth or falsity of advertising claims, but is instead directed to protect the public by ensuring that drugs sold in the marketplace are safe, effective and not misbranded, a

---

[5]It is important to note that, in contrast to the FDCA's regulation of prescription drugs, the DSHEA exempts dietary supplements from FDA premarket approval. 21 U.S.C. § 343(r)(6) (exempting claims as to how a nutrient affects the structure or function of the body from FDA pre-market approval process).

task vested in the FDA to implement and enforce. Id. at 1290 (internal citations omitted). The court concluded that "to the extent that Plaintiffs have alleged that Defendants made statements that were fraudulent (i.e., literally false, misleading, or omitted material facts), their claims are actionable. It is of no matter that the deceptive statements may have been made in order to promote off-label uses of EPO." Id. at 1291. (internal citation omitted).

In the present case, Plaintiffs' claims are based on false and misleading advertising and mislabeling under the Sherman Law. Plaintiffs allege that the inclusion of Bumetanide in StarCaps renders Defendants' advertising of the product as "all natural" false and misleading. Simply alleging that StarCaps contains a prescription drug, Bumetanide, does not invoke federal pre-emption. Thus, Defendants' actions give rise to valid state law claims.

II.  Uniform Single Publication Act

Defendants argue that the Uniform Single Publication Act (USPA), also known as the single publication rule, precludes Plaintiffs from asserting their second (false advertising), fourth (breach of warranty) and sixth (Sherman Law) causes of action. Defendants also argue that Plaintiffs' third (unjust enrichment), fifth (strict product liability) and seventh (negligence) causes of action should be dismissed to the extent that they rely on the same alleged mis-statement as the first cause of action.

The Uniform Single Publication Act provides:

> No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as one issue of a newspaper or book or magazine or any one presentation to an audience or any one

8

> broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions.

Cal. Civ. Code § 3425.3.

The law was originally directed at mass communications, such as newspapers, books, magazines, radio and television broadcasts, and speeches to an audience. When the offending language is read or heard by a large audience, the rule limits a plaintiff to a single cause of action for each mass communication.

The parties dispute whether advertisements and product labels constitute a "publication or exhibition or utterance." The only California court to discuss this issue directly concluded that the use of the same image on various advertisements may constitute a single publication, exhibition or utterance. Christoff v. Nestle USA, 152 Cal. App. 4th 1439, 1461-62 (2007). However, the California Supreme Court granted review of that decision in October, 2007, and the case has not been decided yet. Therefore, the appellate decision may no longer be cited as precedent. Nevertheless, StarCap advertisements and labels, like publications, exhibitions and utterances, are communicative acts and, as such, the Court concludes that they are included in the statute. Further, the phrase "such as" in the statute indicates that the enumerated list of media is not exclusive but exemplary. Thus, the single publication rule is not limited to newspapers, books, magazines, radio, television and movies, and it has even been applied to the internet. Traditional Cat Assn., Inc. v. Gilbreath, 118 Cal. App. 4th 392, 394 (2004).

The parties also dispute whether Plaintiffs can maintain more

than one cause of action for Defendants' alleged misstatements. "In cases where essentially one harm has been alleged, the courts have interpreted the single-publication rule to mean that a plaintiff may have only one cause of action for one publication rather than multiple causes of action for torts such as defamation, invasion of privacy, personal injury, civil rights violations, or fraud and deceit." M.G. v. Time Warner, 89 Cal. App. 4th 623, 629 (2001). In M.G., a magazine and cable television station used a photograph of a Little League team to illustrate stories about adult coaches who sexually molest youths playing sports. The plaintiffs' first four causes of action were all for invasion of privacy on various theories of liability: misappropriation of identity, public disclosure of private facts, intrusion, and false light. Though these were plead as separate causes of action, the court concluded that it was proper to treat them as one cause of action "expressing four different theories." Id. at 630.

Here, it is not necessary to treat Plaintiffs' separate claims as one cause of action expressing different tort theories. The second (false advertising), third (unjust enrichment) and fourth (breach of warranty) causes of action are not traditional torts as contemplated by the phrase "or any other tort" in § 3425.3. Defendants do not cite any binding authority for the proposition that those causes of action are subject to the statute. Therefore, the Court will not dismiss these causes of action under the single publication rule. The Court need not address whether Plaintiffs' fifth (strict product liability), sixth (Sherman Law) and seventh (negligence) causes of action should be dismissed under the single publication rule because those causes of action are

1 dismissed on other grounds described below.

2 III.   Economic Loss Rule

3   The economic loss rule provides that

> recovery under the doctrine of strict liability is limited to physical harm to person or property.  Damages available under strict products liability do not include economic loss, which includes damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits -- without any claim of personal injury or damages to other property.

Jimenez v. Superior Court, 29 Cal. 4th 473, 482 (2002) (internal citations and quotations omitted).  Similarly, economic losses are generally not allowed for negligence claims without any claim of personal injury or damages to other property.  Seely v. White Motor Co., 63 Cal. 2d 9, 18 (1965).

Plaintiffs argue that Defendants' breach of contract violated a social policy such that purely economic losses should be allowed. Plaintiffs rely on Robinson v. Dana Corp., 34 Cal. 4th 979 (2004). In that case, the California Supreme Court decided "whether the economic loss rule . . . applies to claims for intentional misrepresentation or fraud in the performance of a contract." Id. at 984.  The court held that the "economic loss rule does not bar Robinson's fraud and intentional misrepresentation claims because they were independent of [the] breach of contract." Id. at 991. The court noted that "a party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that contract." Id. at 993. Notably, the court focused on the plaintiff's intentional tort claims and did not state that its decision applied to negligence or strict liability claims.  Therefore, Robinson is inapposite and the economic loss rule precludes Plaintiffs' claims for strict

11

1 liability and negligence.  Thus, the fifth and seventh causes of
2 action are dismissed.

IV.     Private Right of Action Under the Sherman Law

Plaintiffs' sixth cause of action is brought directly under the Sherman Law.  The Court dismisses this cause of action because "no private right of action exists to enforce" the Sherman Law. Summit, 922 F. Supp. at 317.  Plaintiffs may assert their Sherman Law violation under Business & Professions Code § 17200.

V.      Alter Ego

Plaintiffs assert claims against Defendant Nikki Haskell, the sole owner of BHP.  Before the alter ego doctrine may be invoked, two elements must be alleged: "First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone."  Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 526 (2000).  Here, Plaintiffs tersely allege that Haskell is "the alter ego of BHP."  FAC ¶ 9.  This allegation fails to state a claim for alter ego liability.  "Conclusory allegations of 'alter ego' status are insufficient to state a claim.  Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003).  Therefore, the Court dismisses Plaintiffs' FAC against Defendant Haskell, with leave to amend.

CONCLUSION

For the foregoing reasons, the Court dismisses with leave to

12

amend all causes of action as they pertain to Defendant Haskell. As to the remaining Defendants, the Court dismisses without leave to amend Plaintiffs' fifth, sixth and seventh causes of action.  If Plaintiffs wish to file an amended complaint as allowed by this order, they must do so within twenty days from the date of this order.  Defendants BHP, VS and GNC must answer the complaint with respect to the first through fourth causes of action within thirty days from the date of this order.

     IT IS SO ORDERED.

Dated: 6/10/09

                         CLAUDIA WILKEN
                         United States District Judge